FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

DMJ:SCF

★   JUN 01 2012   ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK   LONG ISLAND OFFICE

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        -against-

JAMES J. RICH, JR.,
    also known as "Chip," and
JAKYMA MAQUIS BUNN,
    also known as "J-Rock,"

                Defendants.

- - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. § 1951)

EASTERN DISTRICT OF NEW YORK, SS:

        GREGORY KIES, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, on or about and between
May 24, 2012, and May 31, 2012, both dates being approximate and
inclusive, within the Eastern District of New York and elsewhere,
the defendants JAMES J. RICH, JR., also known as "Chip," and
JAKYMA MAQUIS BUNN, also known as "J-Rock," together with others,
did knowingly and intentionally conspire to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, to wit: illegal narcotics, by robbery.

        (Title 18, United States Code, Section 1951)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.    I have been a Special Agent with the FBI for approximately ten years. During my tenure with the FBI, I have investigated various federal criminal violations including robberies and narcotics trafficking. During the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps, and interviewed civilian witnesses. The information set forth below is based upon my experience and training as a Special Agent, my review of recorded conversations and transcripts, documents and other evidentiary items, debriefing of witnesses, and my discussions with other law enforcement agents. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

2.    On or about May 24, 2012, defendant JAMES J. RICH, JR. (hereinafter "RICH") was introduced to a confidential informant ("CI").[2] During a conversation that occurred between

---

[1]    Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2]    The CI is a paid informant who has been working with law enforcement for approximately two years. While the CI has a criminal record, the CI has proven to be reliable and has been corroborated by other sources, including recorded conversations, other witnesses and surveillance by law enforcement.

the CI and RICH on May 24, 2012, the two discussed the prospect of robbing a cocaine and heroin dealer, who RICH was told lived at a residence in Commack, New York.  In advance of this conversation, which occurred at RICH's residence in Wyandanch, New York, law enforcement provided the CI with an audio and video recording device.  Using this device, the CI was successful in recording the entirety of his conversation with RICH concerning the potential robbery.

3.   During the May 24, 2012 conversation, the CI informed RICH that the CI knew that two individuals would be in possession of "sleeves of dope," and United States currency at the Commack residence sometime during the week of May 28, 2012. Later in the conversation, RICH discussed participating in a home invasion robbery at the Commack residence, and to secure one or more additional persons to participate in that robbery.  RICH stated further to the CI during this recorded conversation that he intended to possess a firearm during the robbery, and to ensure that the additional individual(s) he recruited also possessed firearms.  RICH discussed further that he intended to bring "duct tape" and "zip ties" to the robbery site to restrain the intended victims.  RICH and the CI also discussed dividing narcotics and currency obtained during the robbery amongst themselves.

4.    Subsequently, on May 27, 2012, the CI contacted RICH, on RICH's cellular phone, via text message.  In his message, the CI inquired whether RICH was still "in" for the robbery later that week.  RICH responded to the CI's inquiry by stating "hell yeah, u gotta give me the address so I can go scope the place out."[3]

5.    On or about May 30, 2012, RICH contacted the CI and informed the CI that he had secured the participation in the robbery of an additional individual, subsequently identified as defendant JAKYMA MAQUIS BUNN (hereinafter "BUNN"), and that this individual wished to meet the CI.  Subsequently, RICH, the CI, and BUNN met near the Tanger Outlets in Deer Park, New York to discuss the planned robbery at the Commack residence.  This meeting, which occurred inside the CI's white Audi vehicle, was physically surveilled by investigating agents.  It was also recorded by the CI using an audio and video recording device supplied by law enforcement.

6.    During the ensuing conversation, the CI, RICH and BUNN discussed the home invasion robbery in Commack.  All three men discussed the logistics of carrying out the robbery, which included RICH and BUNN forcibly entering the residence after the

---

[3]    As discussed more fully, infra, RICH was arrested on May 31, 2012.  After his arrest, RICH provided his written consent for investigating agents to obtain, and search his two cell phones, which were in his possession at the time of his arrest.

CI transported them to the location. At one point during the meeting, BUNN discussed both the advantage of surprising the intended victims upon entering the residence, and the necessity for using a firearm to intimidate the victims. At the conclusion of the meeting, the CI, BUNN and RICH discussed the manner in which the robbery proceeds would be divided amongst the three men. They also agreed that the robbery would be conducted the following day.

7. Thereafter, and throughout the day of May 31, 2012, the CI and RICH engaged in a series of consensually recorded telephone conversations during which the two discussed, in sum and substance, when and where the robbery participants would meet to conduct the crime. At approximately 7:45 p.m. on May 31, 2012, the CI, RICH and BUNN met in the parking lot of an office building in Commack, New York, which was to serve as a staging point prior to committing the robbery. This meeting was surveilled by investigating agents. After a very brief discussion between the three men, and after agents observed the vehicle carrying BUNN and RICH begin to depart the area, investigating agents arrested BUNN and RICH as they sat in a green Toyota Rav-4 vehicle.

8. At the time of their arrest, BUNN and RICH were each dressed completely in black clothing. RICH was wearing a black long-sleeved thermal shirt, black leggings, black shorts

over those leggings, and dark-colored sneakers.  BUNN was wearing a black t-shirt, black sweat pants, and black sneakers.  BUNN was also wearing gloves.  In plain view on the floor of the vehicle's drivers side agents observed a roll of gray duct tape and an assortment of latex surgical gloves.  No gun was recovered from either BUNN, RICH, or the Toyota Rav-4.

9.    Both RICH and BUNN were arrested in the Toyota, and were subsequently advised of their <u>Miranda</u> rights.  BUNN subsequently engaged agents in a conversation.  During that conversation, BUNN stated, in sum and substance, that on May 30, 2012, RICH visited him and asked BUNN to participate in a robbery.  BUNN additionally stated, in sum and substance and among other things, that he met in Deer Park with RICH and a white male, in the white male's vehicle, to discuss committing that robbery.

WHEREFORE, your deponent respectfully requests that the defendants be dealt with according to law.

GREGORY KIES
Special Agent
FBI

Sworn to before me this
1st day of June 2012

/S/ E. THOMAS BOYLE, MJ

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK